IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JENNIFER BURKE, PH.D., | § | CIVIL ACTION |
| *Plaintiff*, | § | |
| | § | NO. 4:11-CV-01749 |
| VS. | § | |
| | § | |
| PRAIRIE VIEW A&M UNIVERSITY | § | JURY TRIAL DEMANDED |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF JENNIFER BURKE'S FOURTH AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, DR. JENNIFER BURKE ("Dr. Burke"), complaining of Defendant, PRAIRIE VIEW A&M UNIVERSITY ("Prairie View A&M") and would respectfully show unto the Court as follows:

### I.
### PARTIES

1. Plaintiff, Dr. Jennifer Burke, is an individual who is a citizen of the State of Texas and a resident of Harris County, Texas.

2. Defendant, Prairie View A&M University, is an institution of higher education pursuant to Section 61.003 of the Texas Education Code. Prairie View A&M has appeared in this matter.

## II.
## JURISDICTION AND VENUE

3. The U.S. District Court for the Southern District of Texas has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims asserted in this Complaint arise under the Constitution and laws of the United States, including retaliation under Title IX, discrimination and retaliation under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq,.; discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101, et. seq., 42 U.S.C. § 12111, et. seq., and 42 U.S.C. § 12203, et. seq.; and discrimination and retaliation under the Age Discrimination in Employment Act, 28 U.S.C. § 621, et. seq.

4. Venue is appropriate in this Court because a majority of the events giving rise to this Complaint occurred in Waller County, Texas.

## III.
## JURY DEMAND

5. A jury trial has previously been demanded and the jury fee tendered.

## IV.
## ADMINISTRATIVE OR OTHER PREREQUISITES TO FILING SUIT SATISFIED

6. Dr. Burke timely filed a Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC"). *See* Exhibit A.

7. Dr. Burke received her Right to Sue letter from the EEOC/Department of Justice on April 27, 2012. *See* Exhibit B.

8. This lawsuit is filed within ninety (90) days after receipt of the Right to Sue letter from the EEOC; therefore, this suit was timely filed.

# V.
# FACTS

9. Dr. Burke is a Caucasian female, aged 57 years, who has suffered discrimination based on her age, race, gender, disability, and pregnancy in the terms and conditions of her employment at the hands of her employer, Prairie View A&M, a member of the Texas A&M University System, and recipient of federal funds, by and through its administrators and employees, namely Dr. Joahanne Thomas-Smith, provost and senior Vice-President for Academic Affairs ("Provost Thomas-Smith"), Dr. Danny Kelley, Dean of the College of Arts and Sciences ("Dean Kelley"), and Dr. Dejun Liu ("Dr. Liu"), former Department Head of the Department Language and Communications (the "Department"), and was retaliated against based on her complaint of this discrimination.

10. Dr. Burke was also paid less than male and non-white employees performing the same position at Prairie View A&M. Furthermore, she has been retaliated against for: (i) her decision to take leave under the Family Medical Leave Act ("FMLA"); (ii) her decision to file a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") (which is still pending); and (iii) her appeal of the discriminatory decision denying her application for Promotion and Tenure.

11. Dr. Burke began her employment with the Department in 2003, as an Assistant Professor of Communications, working toward tenure. As an Assistant Professor, Dr. Burke made significant scholarly, teaching and service contributions to Prairie View A&M and its students. She secured excellent scores on her performance evaluations. Dr. Burke fully expected to gain tenure in accordance with the requirements provided to her.

12. In the summer of 2004, Dr. Burke took a medical leave under the FMLA due to complications with a twin pregnancy. On December 7, 2004, additional complications with her

pregnancy required her to take additional medical leave. Despite a difficult pregnancy and premature newborn twins at home, Dr. Burke returned to work full-time in early April 2005.

**First Denial of Request for Tenure Extension**

13. On April 23, 2005, shortly after her return to work, Dr. Burke was inexplicably given poor scores on her performance evaluation in the areas of research and service. She had never, until that point, received poor scores. During her 2005 annual evaluation with Dr. Liu, Dr. Burke expressly requested that one additional year be added to her tenure track, as a result of the extended medical leave she was forced to take as a result of her pregnancy-related medical conditions and disability. Dr. Liu informed Dr. Burke at that time that there were <u>no</u> Prairie View A&M policies that permitted such tenure extensions.

14. Nevertheless, Dr. Burke continued her duties teaching and performing research for Prairie View A&M, in accordance with the requirements provided to her, and in accordance with her tenure track.

15. In 2008, towards the end of her tenure track, Dr. Burke took approximately two to three weeks of leave to care for her ailing, elderly mother. Notwithstanding this absence, she continued to teach and research in accordance with the expectations provided to her. Dr. Burke had an active research agenda, excellent service portfolio, and excellent teaching evaluations from her students.

**Second Denial of Request for Tenure Extension**

16. In April 2008 (the year she was up for tenure), Dr. Burke learned that, in fact, there *was* a mechanism for a tenure extension, contrary to what Dr. Liu had represented to her three years earlier. Immediately upon discovering this extension process, Dr. Burke applied for the extension; however, her request was inexplicably denied.

## Discriminatory Tenure Evaluation

17.     Having been denied not one but two separate requests for a tenure extension, Dr. Burke was formally evaluated for tenure in the fall of 2008. In May 2009, Prairie View A&M denied tenure to Dr. Burke. In the denial letter provided to Dr. Burke, Provost Thomas-Smith wrote that Dr. Burke had the opportunity to ask for a tenure extension during her mid-tenure review in 2006, but had failed do so. This comment directly contradicted Dr. Burke's request for an extension from Dr. Liu in April 2005, at which time Dr. Liu denied the existence of any tenure application extension policy. Moreover, Provost Thomas-Smith, a decision-maker in the tenure process, should have been aware that Dr. Burke had sought an extension in 2005 because the Provost had a copy of Dr. Burke's 2005 performance review (wherein Dr. Burke had noted her concerns regarding her disability and FMLA leave).

18.     Another reason given for denying tenure was that Dr. Burke's publications to support tenure were "not good enough." Yet, these were the same publications she had previously been told were more than adequate to support granting tenure. Moreover, non-white faculty members were given tenure with less publications and/or publications of lesser quality than those published by Dr. Burke.[1]

19.     In addition, Dr. Burke learned that documentation related to both of her FMLA leaves, including confidential medical information, was included in the information given to the tenure committee for review. The promotion and tenure committee should not have reviewed Dr. Burke's confidential medical records as part of their decision making process.

20.     Furthermore, Dr. Liu had actively worked to negatively influence the tenure decision when he wrote, "I hope you will be more willing to participate on committees" on Dr.

---

[1] Yet another reason for denying tenure was purported problems with Dr. Burke's curriculum vitae and credentials. These were wholly untrue and essentially manufactured by Dean Kelley to support denial of tenure.

Burke's last performance evaluation. To the contrary, Dr. Burke was very involved in faculty committees and as a result, was voted into the Prairie View A&M Faculty Senate. Thus, the statement that Dr. Burke should be "more wiling to participate on committees" was wholly unsupported, untrue, and negatively influenced tenure committee members to think that Dr. Burke was unwilling to participate on committees.

**Other Acts of Discrimination**

21. Finally, Dr. Burke was paid less, and offered less favorable teaching schedules, than male and non-white employees with similar education and experience. For example, Dr. Yeo, an Asian male professor, was given better summer teaching assignments, service assignments, and consistently paid more than Dr. Burke. Dr. Burke was denied the opportunity to teach the summer classes offered to Dr. Yeo, and thus deprived of the opportunity to earn the same pay as her male, non-white co-worker.

22. Moreover, Dr. Burke was paid less than fourteen (14) of the male assistant professors in the College of Arts and Sciences, Dr. Lee McGriggs, Dr. Darron Garner, Dr. Charles Grear, Dr. Kenneth Howell, Dr. Alex Colvin, Dr. Mohammed Shayib, Dr. Huajun Fan, Dr. James Jones III, Dr. John Cornelius II, Dr. Jackson Decarvalho, Dr. Manouchehr Misaghian, Dr. Kaibin Fu, Dr. Quincy Moore, and Dr. Kevin Storr.

23. While Dr. Burke was compensated only $44,703.00 in 2009, the male comparators were compensated as follows:

| Male Comparator | 2009 Salary |
| --- | --- |
| Dr. Alex Colvin | $49,590.00 |
| Dr. John Cornelius II | $52,450.00 |
| Dr. Jackson Decarvalho | $52,500.00 |

| Dr. Huajun Fau | $51,094.00 |
| Dr. Kaibin Fu | $55,000.00 |
| Dr. Darron Garner | $45,675.00 |
| Dr. Charles Grear | $47,631.00 |
| Dr. Kenneth Howell | $48,767.00 |
| Dr. James Jones III | $51,115.00 |
| Dr. Lee McGriggs | $45,250.00 |
| Dr. Manouchehr Misaghian | $53,040.00 |
| Dr. Quincy Moore | $55,000.00 |
| Dr. Mohammad Shayib | $50,120.00 |
| Dr. Kevin Storr | $55,522.00 |

24. Like Dr. Burke, each of these comparators were assistant professors in the College of Arts and Sciences at Prairie View A&M. These assistant professors were compensated more than Dr. Burke for the performance of jobs requiring equal skill, effort, and responsibility as Dr. Burke's position.

25. Dr. Burke was also paid less and offered less favorable consideration for tenure and promotion than both male and female non-white assistant professors, and was paid less than non-white assistant professors in the Department. In 2009, Dr. Burke was compensated more than only two of the non-white assistant professors. Moreover, Dr. Burke's compensation was comparable to that of non-white faculty with fewer publications and less experience. The non-white assistant professors who were paid more than Dr. Burke, were compensated as follows in 2009:

| | |
|---|---|
| Dr. Delinda Marzette | $45,165.24 |
| Dr. Lee McGriggs | $45,250.00 |
| Dr. Darron Garner | $45,675.00 |
| Dr. Kenyatta Phelps | $45,765.00 |
| Dr. Tonya Scott | $46,451.00 |
| Dr. Tamiko Porter | $49,362.39 |
| Dr. Alex Colvin | $49,590.00 |
| Dr. James Jones, III | $51,114.78 |
| Dr. John Cornelius, II | $52,450.00 |
| Dr. Jackson Decarvalho | $52,500.00 |
| Dr. Joy Marshall | $52,680.96 |
| Dr. Deirdre Vaden | $52,937.01 |
| Dr. Quincy Moore, III | $55,000.00 |
| Dr. Kevin Storr | $55,521.99 |

26. Dr. Burke's denial of promotion and tenure, and ultimately her termination, was based on the discriminatory animus and retaliatory actions initiated by Dr. Liu, Dean Kelley, and Provost Thomas-Smith. In a final letter denying tenure, Provost Thomas-Smith wrote, "[i]t appears Dr. Burke waited too long to begin an active research agenda," which is an express reference to the delay forced upon Dr. Burke as a result of her 2004 pregnancy-related medical condition. Of course, this is the very same delay for which she had twice sought an extension of her tenure track clock so that she would have effectively had the same period of time to work toward earning tenure, which she would have had, but for her period of medical leave.

27. The denial of tenure to Dr. Burke is a representation of the discriminatory animus of Prairie View A&M towards women faculty members, nonwhite faculty members, faculty members with a disability and faculty members over the age of 40. Men are more frequently awarded tenure than women. For example, as of May 2011, in the Department of Arts and Sciences (of which Dean Kelley is dean), 37 men and only 9 women serve in tenured faculty positions. *See* PRAIRIE VIEW A&M FACULTY AND STAFF, http://www.pvamu.edu/pages.com, last accessed May 5, 2011. The repeated incidents by Prairie View A&M and its administrators to discriminate against Dr. Burke, and penalize her because she is a woman over the age of 40, for taking leave during her pregnancy, and the severe illness that accompanied it, and for taking leave to care for her seriously ill children and mother, is a violation of both federal and state law.

**Appeal of Tenure Denial**

28. Following her denial of tenure, Dr. Burke immediately appealed the decision, based on the unlawful discriminatory reasons for the denial and her termination. This appeal was sufficiently clear to put Dr. Burke's employer on notice that Dr. Burke was protesting her rights protected under Title VII, the Americans with Disabilities Act, the Age Discrimination in Employment Act, and Title IX. However, instead of taking seriously the very real concerns that Dr. Burke expressed, Prairie View A&M and its administrators acted with deliberate indifference to her concerns and continued to manufacture new reasons to support their previous denial. On or about October 8, 2009, Dr. Burke was presented with an opportunity to reapply for tenure (the "Offer"). However, this purported extension was in and of itself extremely discriminatory. The Offer laid out new expectations, which were inappropriate in Dr. Burke's particular research field.[2] On October 20, 2009, Dr. Burke sent a response explaining why the Offer could not work

---

[2] Dr. Burke researches communication in very large populations; her work requires a compilation of data from statisticians, communications experts and sometimes other fields.

for someone in her field, and that Dr. Burke felt further discriminated against by this Offer. Prairie View A&M never provided a reply to Dr. Burke's letter.

29.    Following the submission of Dr. Burke's appeal, a hearing of the Prairie View A&M Evidentiary Hearing Committee ("Committee") was held. The hearing committee did not focus on issues of discrimination, but the process surrounding the denial of tenure. Because the committee was comprised of faculty members who are supervised by the same persons Dr. Burke was complaining had improperly discriminated against her, it was impossible for them to fairly consider her complaint without fear of retribution. Further, one member (Pamela Obiomon, who voted against Dr. Burke) was actually a graduate from Prairie View A&M University. Nevertheless, two of the three Committee members ultimately recommended that Dr. Burke be reconsidered for tenure. Dr. Dhadesugoor Vamaan, one of the committee members, also urged Dr. Wright and Prairie View A&M to consider the Committee's recommendation and "protect itself legally," since he clearly recognized the problems Dr. Burke's case raised. Despite the committee's recommendations, in another act of retaliation against Dr. Burke, Dr. Wright upheld the prior tenure decision without basis or explanation.

## VI.
## CAUSE OF ACTION: DISCRIMINATION UNDER TITLE IX

30.    Dr. Burke incorporates all other provisions of this pleading by reference as if set forth in full herein.

31.    At all times relevant to this claim, Dr. Burke was an employee of Prairie View A&M, an employer that receives federal assistance.

32.    Title IX prohibits discrimination on the basis of sex by any education program or activity receiving federal assistance.

33. Dr. Burke was denied tenure and promotion because of her gender, because of her pregnancy, and because of taking medical leave related to pregnancy.

34. Following the discriminatory denial of promotion and tenure, Dr. Burke complained of the discrimination by appealing the denial of promotion and tenure and filing a discrimination claim.

35. In retaliation for protesting her rights to be free from discrimination in her position as an employee of a federally funded educational institution, Prairie View A&M denied the appeal of earlier tenure denial.

36. As a direct and proximate result of Defendant's retaliatory conduct in violation of Title IX, Dr. Burke has and will continue to be deprived of wages, fringe benefits, status, seniority, and other advantages of employment. Additionally, Dr. Burke has, and will continue to experience, mental anguish, humiliation, damage to reputation, physical illness, and other embarrassment, resulting from Prairie View A&M's violation of Title IX.

## VII.
## CAUSE OF ACTION: VIOLATION OF FAMILY MEDICAL LEAVE ACT

37. Dr. Burke incorporates all other provisions of this pleading by reference as if set forth in full herein.

38. At all times relevant hereto, Dr. Burke was an employee and Prairie View A&M an employer within the meaning of the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. (the "FMLA").

39. Dr. Burke fell within the protection of FMLA as a person who missed work because of the birth of her children, a person with a serious health condition, as a person with children with a serious health condition, and as a person with a family member with a serious health condition. 29 U.S.C. § 2612(a)(1)(A)(C) and (D).

40. At all times relevant hereto, Dr. Burke suffered a serious health condition that required continuing treatment from a health care provider. In addition, Dr. Burke's children suffered from a serious health condition in that the children had a physical condition requiring continued treatment from a health care provider. Finally, Dr. Burke's mother suffered from a serious health condition in that she had a physical condition requiring continued treatment from a health care provider.

41. Under the FMLA, Prairie View A&M had an obligation to provide Dr. Burke with up to twelve weeks of leave for a serious health condition rendering Dr. Burke unable to perform the functions of Dr. Burke's position and in order to care for children with a serious health condition, and a family member with a serious health condition.

42. Notwithstanding Prairie View A&M's duties as set forth above, Prairie View A&M willfully violated the FMLA by discriminating and retaliating against Dr. Burke for taking leave under the FMLA, and by disclosing Plaintiff's confidential medical records to faculty members at Prairie View A&M.

43. Prairie View A&M was aware that its acts of discrimination and retaliation against Dr. Burke for taking leave under the FMLA were violations of the FMLA; accordingly, Dr. Burke is entitled to liquidated damages.

44. As a direct and proximate result of Prairie View A&M's discriminatory and retaliatory conduct in violation of the FMLA, Dr. Burke has and will continue to be deprived of wages, fringe benefits, status, seniority, and other advantages of employment. Additionally, Dr. Burke has, and will continue to experience, mental anguish, humiliation, damage to reputation, physical illness, and other embarrassment, resulting from Prairie View A&M's violation of the FMLA.

# VIII.
# CAUSE OF ACTION: DISCRIMINATION BASED ON PAY

45. Dr. Burke incorporates all other provisions of this pleading by reference as if set forth in full herein.

46. At all times relevant hereto, Dr. Burke was a female employed by Prairie View A&M, doing substantially equal work as male employees in the performance of duties that require substantially equal skill, effort, and responsibilities as jobs held by male employees, and Dr. Burke performed her job under similar working conditions as male employees of Prairie View A&M, including Dr. Lee McGriggs, Dr. Darron Garner, Dr. Charles Grear, Dr. Kenneth Howell, Dr. Alex Colvin, Dr. Mohammed Shayib, Dr. Huajun Fan, Dr. James Jones III, Dr. John Cornelius II, Dr. Jackson Decarvalho, Dr. Manouchehr Misaghian, Dr. Kaibin Fu, Dr. Quincy Moore, and Dr. Kevin Storr and Dr. Yeo.

47. The named individuals, like Dr. Burke, were Assistant Professors in the College of Arts and Sciences at Prairie View A&M in 2009, thus their positions require equal skill, effort and responsibility.

48. While Dr. Burke was paid only $44,703.00 in 2009, the male comparators were all paid more for the same or similar work. The male comparators were compensated as follows: Dr. Alex Colvin, $49,590.00; Dr. John Cornelius II, $52,450.00; Dr. Jackson Decarvalho, $52,500.00; Dr. Huajun Fau, $51,094.00; Dr. Kaibin Fu, $55,000.00; Dr. Darron Garner, $45,675.00; Dr. Charles Grear, $47,631.00; Dr. Kenneth Howell, $48,767.00; Dr. James Jones III, $51,115.00; Dr. Lee McGriggs, $45,250.00; Dr. Manouchehr Misaghian, $53,040.00; Dr. Quincy Moore, $55,000.00; Dr. Mohammad Shayib, $50,120.00; and Dr. Kevin Storr $55,522.00. *See* Exhibit C.

49. In violation of Title VII (42 U.S.C. § 2000e, et. seq.), (29 U.S.C. § 206(d)), Dr. Burke was intentionally paid lower wages as compared to male employees performing similar work in the Prairie View A&M College of Arts and Sciences. Such conduct has deprived Dr. Burke of wages and other benefits.

50. Moreover, even if it is determined that Dr. Burke does not perform equal work to her male co-workers, she can still successfully assert a wage discrimination claim under Title VII. In *Washington v. Gunther*, the Supreme Court determined that an employee could successfully assert a claim for wage discrimination under Title VII by establishing that she is paid less because of her gender, regardless of whether there were men performing equal work. *See* 452 U.S. 161 (1981). While Dr. Burke does contend that her male colleagues perform "equal work," upon information and belief, Dr. Burke was paid less than assistant professors because she is woman. Accordingly, under *Gunther*, Dr. Burke can establish a claim of wage discrimination under Title VII.

## IX.
## CAUSE OF ACTION: DISCRIMINATION UNDER TITLE VII

51. Dr. Burke incorporates all other provisions of this pleading by reference as if set forth in full herein.

52. At all times relevant to this Complaint, Dr. Burke was an employee within the meaning of Title VII, and belongs to classes protected under the statute, namely females, and Caucasians. Defendant is an employer within the meaning of Title VII.

53. Defendant intentionally discriminated against Dr. Burke because of her race and gender in violation of Title VII by paying her less than male and non-white faculty members, refusing to grant her tenure extension, unfairly considering her tenure application, denying her promotion and tenure, issuing her a terminal contract, and denying her appeal.

54. As a direct and proximate result of the discrimination, Dr. Burke suffered harm, including denial of a promotion, denial of tenure, discharge, deprivation of past wages, loss of future benefits and wages, physical illness, emotional distress, and mental anguish.

## X.
## CAUSE OF ACTION: TITLE VII RETALIATION

55. Dr. Burke incorporates all other provisions of this pleading by reference as if set forth in full herein.

56. Dr. Burke participated in an activity protected by Title VII by alleging discrimination by Prairie View A&M, and filing a complaint of discrimination with the EEOC. Because of her participation in this protected activity, Prairie View A&M decided to deny Dr. Burke's appeal and uphold the decision to deny Dr. Burke promotion and tenure.

57. Dr. Burke suffered harm as a result of Prairie View A&M's retaliatory conduct, including denial of a promotion, denial of tenure, discharge, loss of future benefits and wages, physical illness, emotional distress, and mental anguish.

## XI.
## CAUSE OF ACTION: AMERICANS WITH DISABILITIES ACT

58. Following her pregnancy, Dr. Burke continued to suffer illness as a result of pregnancy complications, which substantially limited one or more major life activities. Dr. Burke was still able to perform the essential functions of her job.

59. At all times relevant to this complaint, Dr. Burke was an employee, and Prairie View A&M was an employer within the meaning of the Americans with Disabilities Act ("ADA").

60. Defendant intentionally discriminated and retaliated against Dr. Burke because of her disability in violation of the ADA by refusing to grant her tenure extension, unfairly

considering her application for tenure, denying her promotion and tenure, issuing her a terminal contract, and denying her appeal.

61. As a direct and proximate result of the discrimination and retaliation, Dr. Burke suffered harm, including denial of a promotion, denial of tenure, discharge, loss of future benefits and wages, emotional distress, physical illness, and mental anguish.

## XII.
## CAUSE OF ACTION: AGE DISCRIMINATION IN EMPLOYMENT ACT

62. At all times relevant to his complaint, Dr. Burke was an employee, and Prairie View A&M was an employer, within the meaning of the Age Discrimination in Employment Act ("ADEA"). Plaintiff is over the age of forty, and thus belongs to the class of employees protected by the ADEA. Prairie View A&M intentionally discriminated against Dr. Burke in violation of the ADEA because of her age.

63. Defendant intentionally discriminated and retaliated against Dr. Burke because of age in violation of the ADEA by refusing to grant her tenure extension, unfairly considering her tenure application, denying her promotion and tenure, issuing her a terminal contract, and denying her appeal. Because of Defendant's violation of the ADEA, Plaintiff is entitled to reinstatement.

## XIII.
## DAMAGES

64. Dr. Burke seeks all appropriate relief, including but not limited to, the following:

   a. Compensatory damages as provided by statute and common law;

   b. Exemplary damages;

   c. Reinstatement;

    d. Pre-judgment and post-judgment interest in the maximum amounts allowed by law;

    e. Liquidated damages;

    f. Costs of suit, including expert fees; and

    g. Attorney's fees.

## XIV.
## PRAYER

WHEREFORE PREMISES CONSIDERED, Dr. Burke requests that Prairie View A&M be cited to appear, that judgment be rendered against Prairie View A&M for the discriminatory acts it has committed against Dr. Burke, and that Dr. Burke recover all measures of damages as noted above, in that Dr. Burke be reinstated to the tenured faculty position she has earned, recover all compensatory damages, attorneys fees, expert fees, prejudgment and post-judgment interest in the maximum amounts as allowed by law, costs of suit and such other and further relief to which Dr. Burke may be justly entitled.

Respectfully submitted,

By:    /Gaines West_____
GAINES WEST
ATTORNEY IN CHARGE
Texas State Bar No. 21197500
Southern District No.: 5327
E-mail: gaines.west@westwebblaw.com
BAILI B. RHODES
Texas State Bar No.: 24065969
Southern District No.: 1045844
E-mail: baili.rhodes@westwebblaw.com

WEST, WEBB, ALLBRITTON & GENTRY, P.C.
1515 Emerald Plaza
College Station, Texas 77845-1515
Telephone ~ (979) 694-7000
Facsimile ~ (979) 694-8000
ATTORNEYS FOR JENNIFER BURKE

## CERTIFICATE OF SERVICE

Dr. Burke hereby certify that a true and correct copy of the foregoing document, *Plaintiff's Fourth Amended Complaint*, was served on the counsel listed below via the CM/ECF electronic filing system and e-mail on June 11, 2012:

William T. Deane            ECF and email:bill.deane@oag.state.tx.us
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548


                                            /s/ Gaines West