# WEST, WEBB, ALLBRITTON & GENTRY
## A PROFESSIONAL CORPORATION

— *Established in 1982* —

**ATTORNEYS:**

STEVEN N. ALLBRITTON
ROY D. BRANTLEY†
TERRANCE D. DILL, JR.
PATRICK W. FOGARTY
MICHAEL H. GENTRY**
JENNIFER D. JASPER
KEITH L. KRUEGER†
DAVID T. POLING
BAILI B. RHODES
KENDRA L. SUHLING
JOHN C. WEBB, JR.
GAINES WEST

**OF COUNSEL:**

FRED LOHMEYER***

1515 EMERALD PLAZA
COLLEGE STATION, TEXAS 77845-1515
TELEPHONE: (979) 694-7000
TELECOPIER: (979) 694-8000
WEB SITE: http://www.westwebblaw.com

*BOARD CERTIFIED
PERSONAL INJURY TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

**BOARD CERTIFIED
COMMERCIAL REAL ESTATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

***BOARD CERTIFIED
ESTATE PLANNING AND PROBATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

† LICENSED TO PRACTICE BEFORE THE UNITED
STATES PATENT AND TRADEMARK OFFICE

February 18, 2010

EEOC
Attn: Charge Filing
Mickey Leland Federal Bldg.
1919 Smith St. #600
Houston, TX 77002-8049

**VIA HAND DELIVERY AND**
**FACSIMILE: 1 (713) 209-3381**

RE:   Charge of Discrimination; Jennifer Burke

Dear Investigator:

Please find enclosed for filing the original and one copy of the Charge of Discrimination for Dr. Jennifer Burke, and the EEOC's Intake Questionnaire, both signed by Dr. Burke. Please file the original Charge, stamp "received" on the copy, and return the copy to our courier.

If you should have any questions, please do not hesitate to contact the undersigned.

Sincerely,

Gaines West

GW/pb
w/Attachment

No. 4:11-CV-01749
**Ex. A**
to Plaintiff Jennifer
Burke's Fourth
Amended Complaint

P:\gaines_west\Burke_Jennifer_20856\EEOC Filing Letter 02-1810.doc

# CHARGE OF DISCRIMINATION OF
# DR. JENNIFER BURKE

I. **DATE:**   February 18, 2010

II. **COMPLAINANT:**

Jennifer Burke, PhD

III. **EMPLOYER COMPLAINED OF:**

Prairie View A&M University
P.O. Box 519
FM 1098 Rd & University Dr
Prairie View, Texas - 77446-0519

Texas A&M University System
200 Technology Way
College Station, Texas 77845
(979) 458-6000
Number of Employees: 27,000

IV. **DESCRIPTION OF VIOLATIONS:**

I am a white, woman, aged 54 years, who has been discriminated against in the terms and conditions of my employment by my employer, Prairie View A&M University ("Prairie View") a member of the Texas A&M University System, by and through its administrators, namely Dr. Joahanne Thomas-Smith, provost and senior Vice-President for Academic Affairs, Dr. Danny Kelley, Dean of the College of Arts and Sciences, and Dr. Dejun Liu, former Department Head of the Department, because of my age, sex, pregnancy, race, and disability. I began my employment with Prairie View's Department of Language and Communications (the "Department") in 2003, as an Assistant Professor of Communications, working toward tenure. As an Assistant Professor, I have made significant scholarly, teaching, and service contributions to Prairie View and its students. However, my dedication and devotion to Prairie View and the Department, have been rewarded with only the discriminatory animus that is prevalent in the Department, and openly exhibited and furthered by Provost Thomas-Smith, Dean Kelley and Dr. Liu, former Head of the Department, and as further endorsed, encouraged and fostered by Prairie View and the Texas A&M System. The discriminatory animus toward me, a 54 year old, white, woman, both during my pregnancy and while I continued to suffer from disability caused by complications of my pregnancy, resulted in a discriminatory denial of tenure and has created a hostile and unbearable work environment.

The above mentioned Prairie View faculty and administrators commenced a pattern of discriminatory treatment toward me during the second year of my tenure application period that culminated in the eventual denial of my tenure application. In the summer of 2004, I took a medical leave due to complications with a twin pregnancy. On December 7, 2004, additional complications with my pregnancy resulted in me having to request additional medical leave. I

CHARGE OF DISCRIMINATION OF DR. JENNIFER BURKE                                                    PAGE 1 OF 6

returned to work on March 28, 2005, with only light duty restrictions. Understandably, what became a serious illness, related to my attempt to carry my children to term, wholly prevented me from completing the research and service that I would normally accomplish during an academic year.

On April 23, 2005, shortly after my return to work, I was inexplicably given poor scores on my 2004-2005 performance evaluation in the areas of research and service. During my annual evaluation, I asked Dr. Liu, my department head, for an extension of the tenure application period due to my pregnancy related medical conditions and disability. Dr. Liu informed me that there were no Prairie View policies that permitted tenure extensions. I told Dr. Liu that I hoped the low scores would not affect my tenure, and wrote on my evaluation "This year I was out under FMLA and Medical leave. I hope this does not affect my evaluation. I also think I should be evaluated the same as my peers." The employment manuals and tenure handbooks that I had been given contained no mention of a tenure extension option. I learned much later that tenure extensions were available and that Dr. Liu had withheld the information regarding the availability of my being able to seek such an extension.

After my medical absence, Dr. Liu began to increase, without cause, oversight of my work and performance. Dr. Liu began to scrutinize my work in a manner different from the treatment others received. Also, he began examining my work habits and productivity more than in previous years. For example, I suddenly began observing that Dr. Liu often waited outside my classes to see when I let my students out of class.[1] Prior to my medical leave for my pregnancy, Dr. Liu never recorded my absences, nor did he express any concerns about my work attendance, he never waited outside my classes to check to see when I let students leave, and he treated me similarly to all other faculty members. These strict new "standards," arbitrarily set and applied by Dr. Liu, were not applied to other employees, similarly situated to me.

Additionally, in 2006-2007, Dr. Liu arbitrarily created an ad hoc attendance rule, which he announced at the beginning of the school year department meeting. According to this rule, anyone absent on two consecutive teaching days was required to bring a note verifying the absences; additionally, any day in between teaching on which the instructor did not teach a class was also counted as an absence. After the announcement of this new rule, I recognized I was being singled out and further, as a result, I was being blamed and targeted by the hostility of colleagues who recognized I was the cause for the new rule. This announcement made me realize that in addition to me being the target of discrimination by my supervisors, it had become the plan of my supervisors to create a discriminatory and hostile work environment by turning my colleagues against me.

---

[1] Of note, I was also out sick from work more than usual due to my pregnancy related hypertension (disability related to my pregnancy). My twins were born premature and were hospitalized after their birth; accordingly, the normal infant illnesses that they experienced always caused extra concern, and were illnesses "times two," which caused more leave requirements. However, my absence due to these infant illness should not have been characterized as "excessive," they were normal (times two) outages.

### A. THE "STOP-THE-CLOCK" PROVISION

1. Tenure Applicant Meeting

Approximately three years after I had requested an extension of my tenure "clock" from Dr. Liu, Dean Kelley presided over a tenure track informational meeting for all Assistant Professors in the Brailsford College of Arts & Sciences, held during the Spring of 2008. Provost Thomas-Smith attended the meeting to explain that tenure track faculty could "stop-the-clock" if they had a medical condition which prevented them from performing required research, teaching, or service during their tenure application period.

2. Request for Extension

Despite my fear of being discriminated against for exercising medical leave because of my pregnancy and disability, or for asking for accommodations (such as the extension because of my pregnancy and disability), at the end of the informational meeting, I did ask Dean Kelley to review my curriculum vitae. Dean Kelley voiced concern about my productivity during the 2004-2005 academic year. He said that Prairie View was looking for consistency from their faculty in contrast to many publications over just a few years. He ignored that my curriculum vitae indicated that I had achieved consistency as he said Prairie View required. Also, Dean Kelley said he would like to see me as first author on one publication, second author on one publication, and that I would get credit for third authorships.[2]

When I explained to Dean Kelley that I was on pregnancy and disability leave in 2004-2005 but had been told by Dr. Liu that I could not get an extension, Dean Kelley informed me that Dr. Liu should have been aware of the tenure extension rule, which allows more time to apply for tenure in cases like mine, and that he should have recommended that I request the "stop-the-clock" provision in 2005, or in my mid-tenure review. During this meeting, both Dean Kelley and Provost Thomas-Smith recommended that I ask for the "stop-the-clock provision" as quickly as possible. Therefore, on April 4, 2008, against the advice of my chairperson, Dr. Liu, I submitted a formal, written request for an extension based on the "stop-the-clock provision" from Dean Kelley. In response to my request, Dean Kelley asked that I formally request the stop-the-clock provision from Dr. Liu. I then sent the same tenure extension request to Dr. Liu.

For the five months following my request, I repeatedly asked Drs. Liu, Kelley, and Thomas-Smith to consider my extension. Eventually, in an act of discriminatory animus, on August 6, 2008, Provost Thomas-Smith denied my tenure extension request based on recommendations of Dr. Liu and Dean Kelley. Provost Thomas-Smith's rationale in support of the extension denial misconstrues the events that actually occurred. In her made-up letter to me, Thomas-Smith claimed that Dr. Liu had been required to hire another faculty member to reduce my workload so I could, "pursue scholarly activities" during medical leave. At the time of my leave neither Dr. Liu, my physician, nor I could predict the outcome of my illness, or that my babies would be born prematurely. My absence was not to "pursue scholarly activities" but due to extreme illness, and disability related to my pregnancy. To couch it as such is a gross misstatement of the facts, and it further demonstrates the animus held by Provost Thomas-Smith towards me.

---

[2] This had not previously been a requirement.

In a clear act of discriminatory animus toward me, Prairie View and its administrators based their denial of my requested extension, and eventually the denial of my tenure application, on my pregnancy and disability related medical absence. Such conduct is inconsistent with both state and federal law. In her denial letter, Provost Thomas-Smith indicated that I had the opportunity to ask for a tenure extension during my mid-tenure review in the spring or fall of 2006. This comment was contrary to the fact that I *did* request an extension from Dr. Liu in the spring of 2005, but Dr. Liu denied the existence of any tenure application extension policy and thus denied my request. Provost Thomas-Smith should have been aware that I had sought an extension and that it had been denied, she had a copy of my 2005 performance review (where I had written my concerns regarding my disability) in her office. Provost Thomas-Smith's manufactured support for my tenure denial fails to hide the discriminatory basis for the denial.

### B. DENIAL OF TENURE APPLICATION

Throughout the tenure application period, I was repeatedly faced with changing tenure requirements. Publications that I had once been told were more than adequate to support granting tenure were now deemed "not good enough." It became clear that, Prairie View and its administrators would take any possible course of action to discriminate against me and prevent me from receiving tenure. Further to support the ruse made up by Provost Thomas-Smith, and Dr. Liu, Dean Kelley manufactured problems with my curriculum vitae and other credentials.[3]

Discrimination and retaliation became the hallmark of my tenure review. Dr. Liu worked to negatively influence the tenure process by writing, "I hope you will be more willing to participate on committees" on my performance evaluation. This simple statement, without any factual support, influenced tenure committee members to think that I was unwilling to participate on committees. To the contrary, I was very involved in faculty committees.[4] Faculty in my department will attest to the fact that I performed outstanding committee work, which led to me being voted into the Prairie View A&M Faculty Senate.

The ultimate act of discrimination came with the denial of my application for tenure. On May 6, 2009, I was finally notified that my application for tenure had been denied and that none of my appeals for fairness had worked. This denial was clearly based on the discriminatory animus and retaliatory standards initiated by Dr. Liu, Dean Kelley, and Provost Thomas-Smith. In this final letter denying tenure, Provost Thomas-Smith wrote, "It appears Dr. Burke waited too long to begin an active research agenda," which incredibly and inexplicably references the time that I spent on maternity leave.

Dean Kelley stated in my tenure denial letter that I had higher than average college and university Student Opinion Surveys (SOS) scores, however, "I had [an] excessive number of absences from the classroom for various personal reasons. Obviously, classroom effectiveness was adversely affected." To characterize medical leave as leave for "personal reasons" is yet another

---

[3] Dean Kelley attempted to discredit my publications by claiming that they were irregular for the reason that I did not present publication contracts. However, the truth is that the publishers do not give contract acceptances for peer reviewed articles. Further, Dr. Liu told me that I did not need to supplement any additional information regarding forthcoming publications, and that instead, Dean Kelley would ask for additional information if he had questions. Additionally, Dean Kelley refused to accept my dissertation, which has been published as a book, although he had accepted similar published dissertations of my colleagues.

[4] The only committee on which I did not participate that year was a grade appeal of a student who had threatened to "beat my ass" and had been reported to a college disciplinary board the previous year.

blatant example of the continued, rampant discriminatory animus and retaliatory treatment made the basis of this Charge.

The repeated attempts by Prairie View and its administrators to discriminate against me, and penalize me, for taking leave during my pregnancy, and the severe illness that accompanied it, is a violation of both federal and state law, and should not be allowed to continue.

### C. APPEAL

Following my denial of tenure, I immediately appealed the decision, based on the unlawful discriminatory reasons for the denial and my termination. However, instead of taking seriously the very real concerns that I expressed, Prairie View A&M and its administrators have continued to manufacture reasons to support their denial. On or about October 8, 2009, I was presented with an opportunity for tenure extension (the "Offer"). However, this purported extension was in and of itself extremely discriminatory. The Offer laid out new expectations, which would be impossibly burdensome to achieve in my particular research field.[5] On October 20, 2009, I sent a response explaining why the Offer could not work for someone in my field, and that I felt further discriminated against by this October Offer letter. As of the submission of this Charge, I have seen no response to my October 20, 2009, letter.

### D. OTHER ACTS OF DISCRIMINATION

In addition to the many instances of discrimination against me because of my age, sex, pregnancy, race, and disability described hereinabove, I have experienced many acts of discrimination not directly related to the tenure decision and its processes. I have been paid less or denied the opportunity to make as much money as younger employees, male employees, non-white employees, and employees who have not sought accommodations because of pregnancy or disability.

For example, Dr. Yeo, an Asian, male assistant professor, who is a good friend of Dr. Liu, has been given an opportunity to teach more summer school classes than me, and thus been paid more than me. We have the opportunity to be paid additional compensation based on the number of courses that we teach during the summer. Instead of giving each faculty member an opportunity to teach several summer classes, I was allowed to teach only one summer course, while Dr. Yeo was allowed to teach at least two.[6] Through this preferential granting of summer class assignments, Prairie View and its administrators allow its male, non-white employees to earn more compensation than female, white employees.

In yet another act of discrimination because of my age, race, pregnancy and disability, Tonisha Taylor, an African-American female was hired by the department during the 2008-2009 with an entry level salary that is the same as my current salary (it has taken me five years to reach this same salary, and I am a white female). Prairie View has repeatedly penalized me for publications which it deems "not good enough," yet, Dr. Taylor, an African-American, who had no publications and had written only one encyclopedia article, was awarded with a salary commensurate with several years experience and many publications. Prairie View and its

---

[5] I research communication in very large populations; my work requires a compilation of data from statisticians, communications experts and sometimes other fields.
[6] It is important to understand that when Dr. Yeo was given multiple summer courses to teach, I was required to do extra work to help Dr. Yeo with his committees; however, I was denied the opportunity to reap the benefit.

PAGE 5 OF 6

CHARGE OF DISCRIMINATION OF DR. JENNIFER BURKE

administrators have applied discriminatory standards to me and my performance to avoid paying me a salary that is equal to my male and non-white peers.

These examples highlight the discrimination that I face, and continue, to face as a 54 year old, white female, who has sought accommodations related to disability and pregnancy, at Prairie View A&M University.

## V. CONCLUSION

The rampant discrimination of Prairie View and its administrators, including but not limited to, Provost Joahanne Thomas-Smith, Dean Danny Kelley, and Dr. Dejun Liu, was flagrant and ended my employment at Prairie View A&M. The above named administrators have discriminated against me and at the same time reaped the benefit of my seven respectable peer reviewed publications, which recognize and give credit to them, and Prairie View A&M University. The tenure review letters, about me, contain many exaggerations and statements about me that are simply untrue.[7] Furthermore, my medical documentation was included with the documents that were used to support my tenure denial; this never should have occurred. To use my pregnancy and related illness to support my denial tenure is a violation of federal and state law, and should never be permitted.

The discriminatory animus of Prairie View and its administrators has not only caused me severe emotional, physical, and economic harm but it has harmed my reputation. Committees I once associated with are no longer contacting me for presentations; additionally, my colleagues at Prairie View and my peers at other institutions believe that, if I receive tenure, it will be because I complained. I moved my entire family to Texas and now I must relocate for other employment opportunities. The ongoing effects of these complained of discriminatory acts have again caused me emotional, physical, and economic harm.

Not only is the conduct of Prairie View and its administrators a violation of both state and federal law, but such conduct by an institution founded on diversity should never be tolerated. The repercussions of the discrimination, set in motion by Department Head Liu, and furthered by Dean Kelley, and Provost Thomas-Smith have been devastating and have caused me to suffer emotional, physical, and economic harm. I fear for the discriminatory animus that is continually projected at Prairie View toward persons over the age of 40, women, women who are pregnant, people with disabilities, and people who are white. I submit this Charge with the hope that the EEOC can help remedy the discrimination that I have experienced, require Prairie View A&M to compensate me for the salary increases that I have actually earned, as well as compensation for the emotional and economic harm that I have suffered, and prevent the discrimination that others are certain to experience.

---

[7] For example, it is untrue to state that I had "many student complaints," when I know of only three; or state that I have a 'poor commitment to teaching' based on my missing class when the reason I was out ill was pregnancy related illnesses.

## VERIFICATION

THE STATE OF TEXAS    §
                      §
COUNTY OF Harris      §

    BEFORE ME, the undersigned authority, on this day personally appeared _Jennifer Burke_, known to me to be the persons whose name is subscribed to the foregoing EEOC Intake Questionnaire and Charge of Discrimination, and stated on her oath that the foregoing answers to the EEOC Intake Questionnaire and Charge of Discrimination are true and correct to the best of her knowledge and belief.

By: _Jennifer Burke / Christopher Wren_

Name: _Jennifer Burke / Christopher Wren_

    SWORN AND SUBSCRIBED BEFORE ME by the said _Jennifer Burke_, on this the _17_ day of _February_, 200_8_, to certify which witness my hand and seal of office.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

CHRISTOPHER N. WREN
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 07/17/2010



# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.

1. **Personal Information**

Last Name: Burke   First Name: Jennifer   MI: Anne
Street or Mailing Address: ▓▓▓▓   Apt Or Unit #: ▓▓▓▓
City: ▓▓▓▓   County: ▓▓▓▓   State: ▓▓▓▓   ZIP: ▓▓▓▓
Phone Numbers: Home: (▓▓▓) ▓▓▓▓   Work: (▓▓▓) ▓▓▓▓
Cell: (▓▓▓) ▓▓▓▓   Email Address: ▓▓▓▓
Date of Birth: ▓▓▓▓   Sex: Male ___ Female: X   Do You Have a Disability? Yes ☐ No ☐ I did suffer from a disability during the time at issue.

Please answer each of the next three questions. i. Are you Hispanic or Latino? Yes ☐ No ☒
ii. What is your Race? Please choose all that apply. ☐ American Indian or Alaska Native ☐ Asian
☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☒ White
iii. What is your National Origin? American

Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:
Name: Gaines West   Relationship: Attorney
Address: 1515 Emerald Plaza   City: College Station   State: TX   Zip Code: 77845
Home Phone: ( )   Other Phone: (979) 694-7000

I believe that I was discriminated against by the following organization(s): (Check those that apply)

Employer X   Union ___   Employment Agency ___   Other (Please Specify) ___

2. **Organization Contact Information**

Organization #1 Name: Prairie View A&M University
Address: PO Box 519   County: Waller
City: Prairie View   State: TX   Zip: 77446   Phone: (936) 261-3311
Type of Business: University   Job Location if different from Org. Address:
Human Resources Director or Owner Name: Mr. Albert Gee   Phone: 936-261-1730
Number of Employees in the Organization at All Locations: Please Check (√) One
Less Than 15 ☐   15 - 100 ☐   101 - 200 ☐   201 - 500 ☒   More 500 ☐

Organization #2 Name: Texas A&M University System
Address: 200 Technology Way   County: Brazos
City: College Station   State: TX   Zip: 77845   Phone: (979) 458-6000

2

Type of Business: __University__   Job Location if different from Org. Address: _____

Human Resources Director or Owner Name: __Janelle R. Ramirez__   Phone: __979-862-1723__

Number of Employees in the Organization at All Locations: Please Check (√) One

Less Than 15 ☐   15 - 100 ☐   101 - 200 ☐   201 - 500 ☐   More 500 ☒

3. Your Employment Data (Complete as many items as you can)

Date Hired: __August 2003__   Job Title At Hire: __Assistant Professor__
Pay Rate When Hired: __$39,000.00/ per annum__   Last or Current Pay Rate: __$44,700.00 / per annum__
Job Title at Time of Alleged Discrimination: __Assistant Professor__
Name and Title of Immediate Supervisor: __Dr. Liu__
If Applicant, Date You Applied for Job _____   Job Title Applied For _____

4. What is the reason (basis) for your claim of employment discrimination?

*FOR EXAMPLE, if you are over the age of 40 and feel you were treated worse than younger employees or you have other evidence of discrimination, you should check (√) AGE. If you feel that you were treated worse than those not of your race or you have other evidence of discrimination, you should check (√) RACE. If you feel the adverse treatment was due to multiple reasons, such as your sex, religion and national origin, you should check all three. If you complained about discrimination, participated in someone else's complaint or if you filed a charge of discrimination and a negative action was threatened or taken, you should check (√) RETALIATION.*

Race ☒   Sex ☒   Age ☒   Disability ☒   National Origin ☐   Color ☒   Religion ☐   Retaliation ☒   Pregnancy ☒

Other reason (basis) for discrimination (Explain). _____

5. What happened to you that you believe was discriminatory? <u>Include the date(s) of harm, action(s) and include the name(s) and title(s) of the persons who you believe discriminated against you.</u> (Example: 10/02/06 - Written Warning from Supervisor, Mr. John Soto)

A) Date: _____   Action: _____
SEE CHARGE OF DISCRIMINATION, ATTACHED
Name and Title of Person(s) Responsible: _____

B) Date: _____   Action: _____

Name and Title of Person(s) Responsible: _____

Describe any other actions you believe were discriminatory.

(Attach additional pages if needed to complete your response.)

6. What reason(s) were given to you for the acts you consider discriminatory? By whom? Title?

   SEE CHARGE OF DISCRIMINATION, ATTACHED

7. Name and describe others who were in the same situation as you. Explain any similar or different treatment. Who was treated worse, who was treated better, and who was treated the same? Provide race, sex, age, national origin, religion, and/or disability status of comparator if known and if connected with your claim of discrimination. Add additional sheets if needed.

   | Full Name | Job Title | Description |
   |---|---|---|
   | 1. See charge of discrimination, Attached | | |
   | 2. | | |
   | 3. | | |

   Answer questions 8-10 only if you are claiming discrimination based on disability. If not, skip to question 11.

8. Please check all that apply:
   - ☐ Yes, I have an actual disability
   - ☒ I have had an actual disability in the past
   - ☐ No disability but the organization treats me as if I am disabled

9. If you are alleging discrimination because of your disability, what is the name of your disability? How does your disability affect your daily life or work activities, e.g., what does your disability prevent or limit you from doing, if anything? (Example: lifting, sleeping normally, breathing normally, pulling, walking, climbing, caring for yourself, working, etc.).

   Pre-eclampsia: Life threatening illness when it became severe; I was hospitalized for this treatment.
   - Bedrest; Anti-hypertension medicine; Anti-covulsant medication;
   - Premature birth due of severity and dangerous healthy condiction;

   Hypertension: Took hypertension medication;
   Limit Stress

10. Did you ask your employer for any assistance or change in working condition because of your disability?

    Yes ☒   No ☐

    Did you need this assistance or change in working condition in order to do your job?

    Yes ☒   No ☐

    If "YES", when? 2004, 2005, 2006     To whom did you make the request? Provide full name of person Dr. Liu     How did you ask (verbally or in writing)? Both verbally & in writing

    Describe the assistance or change in working condition requested?
    Also: Dean Danny Kelley and Provost Joahanne Thomas-Smith in 2008, verbally and in writing.

4

11. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and indicate what they will say. Add additional pages if necessary.

| NAME | JOB TITLE | ADDRESS & PHONE NUMBER |

A. See attached Charge of Discrimination; Will Supplement.

| NAME | JOB TITLE | ADDRESS & PHONE NUMBER |

B.

| NAME | JOB TITLE | ADDRESS & PHONE NUMBER |

C.

12. Have you filed a charge previously in this matter with EEOC or another agency?   Yes ☐   No ☒

13. If you have filed a complaint with another agency, provide name of agency and date of filing:

14. Have you sought help about this situation from a union, an attorney, or any other source?

Yes ☒   No ☐   - If yes, from whom and when? Provide name of organization, name of person you spoke with and date of contact. Results, if any?

Jose Briceno - Spring 2008; Texas Faculty Association, No Results
Gaines West - Spring 2008; Retained Attorney
    Assiting with Prairie View A&M Appeal Hearing and this Charge.

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so within either 180 or 300 days from the day you knew about the discrimination. The amount of time you have depends on whether the employer is located in a place where a state or local government agency has laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you want to file a charge, you should check Box 1, below. If you would like more information before deciding whether to file a charge or you are worried or have concerns about EEOC's notifying the employer, union, or employment agency about your filing a charge, you may wish to check Box 2, below.

Box 1

☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, or retaliation for opposing discrimination.   Charge of Discrimination is Attached

Box 2

☐ I want to talk to an EEOC employee before deciding whether to file a charge of discrimination. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

_Jennifer Burke_   2-17-10
Signature                    Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:

1. FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08).
2. AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626, 42 U.S.C. 12117(a)
3. PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4. ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters.
5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. The providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge of discrimination. It is not mandatory that this form be used to provide the requested information.

## VERIFICATION

THE STATE OF TEXAS §
§
COUNTY OF Harris §

BEFORE ME, the undersigned authority, on this day personally appeared _Jennifer Burke_, known to me to be the persons whose name is subscribed to the foregoing EEOC Intake Questionnaire and Charge of Discrimination, and stated on her oath that the foregoing answers to the EEOC Intake Questionnaire and Charge of Discrimination are true and correct to the best of her knowledge and belief.

By: _Jennifer Burke_
_Christopher Wren_

Name: _Jennifer Burke_
_Christopher Wren_

SWORN AND SUBSCRIBED BEFORE ME by the said _Jennifer Burke_, on this the _17_ day of _February_, 200_0_ to certify which witness my hand and seal of office.

_[signature]_
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

CHRISTOPHER N. WREN
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 07/17/2010

| EEOC Form 5 (5/01) | | | |
|---|---|---|---|
| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>AMENDED<br>460-2010-01923 | and EEOC |

**Texas Workforce Commission Civil Rights Division**
State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Jennifer Burke | [redacted] | [redacted] |

Street Address: [redacted]   City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| PRAIRIE VIEW A & M UNIVERSITY | 500 or More | (936) 261-3311 |

Street Address: P.O. Box 519, Fm 1098 Rd. And University Rd., Prairie View, TX 77446

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☒ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 05-06-2009   Latest: 02-18-2010
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

SEE ATTACHED.

AMENDMENT: On or about April 21, 2010, my appeal of the non-renewal of my tenure track appointment was denied by George C. Wright, President. I believe this action is another act of discrimination against me because of my sex, female; pregnancy, disability, race, White; age, 54; and retaliation for my decision to protest discrimination and file a complaint with EEOC.

Signature: *Jennifer Burke*   Date: 1-5-11

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: 1/5/2011   Charging Party Signature: *Jennifer Burke*

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year): 1/5/2011

MATT W. HOWARD
Notary Public, State of Texas
My Comm. Expires July 28, 2012